# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                                    NEWS RELEASE #005

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **30th day of January, 2019**, are as follows:

**PER CURIAM**:

2018-B-1472          IN RE: ALICIA JOHNSON BUTLER

Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Alicia Johnson Butler, Louisiana Bar Roll number 26613, be and she hereby is suspended from the practice of law for a period of one year and one day.  All but six months of this suspension shall be deferred, subject to respondent's successful completion of a two-year period of probation governed by the conditions set forth in this opinion.  The probationary period shall commence from the date respondent and the ODC execute a formal probation plan.  Any failure of respondent to comply with the conditions of probation, or any misconduct during the probationary period, may be grounds for making the deferred portion of the suspension executory, or imposing additional discipline, as appropriate.  All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.

GENOVESE, J., dissents and, considering the facts presented herein, would reject any deferral of suspension.

SUPREME COURT OF LOUISIANA

NO. 2018-B-1472

IN RE: ALICIA JOHNSON BUTLER

ATTORNEY DISCIPLINARY PROCEEDING

PER CURIAM

This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Alicia Johnson Butler, an attorney licensed to practice law in Louisiana.

## PRIOR DISCIPLINARY HISTORY

Before we address the current charges, we find it helpful to review respondent's prior disciplinary history. Respondent was admitted to the practice of law in Louisiana in 2000. In 2013, this court accepted a joint petition for consent discipline in which respondent stipulated that she failed to promptly notify a third party of receipt of funds in which the third party had an interest, failed to hold those funds separate from her personal funds, and misinformed a federal court of the correct amount of a reimbursement owed to her following the settlement of her client's case. For this misconduct, respondent was suspended from the practice of law for six months, fully deferred, subject to one year of supervised probation with the condition that she attend Ethics School. *In re: Butler*, 13-2632 (La. 1/10/14), 144 So. 3d 844 ("*Butler I*").

## UNDERLYING FACTS

In October 2013, Tammy Charles hired respondent to represent her on a contingency fee basis in a claim for damages arising out of injuries she had sustained in a motor vehicle accident. Prior to hiring respondent, Ms. Charles had negotiated with her insurer and made a claim for "med pay" benefits. These benefits were paid.

Respondent filed suit against the alleged tortfeasor and his insurer in the 16th JDC for the Parish of Iberia. The case was set for trial in March 2015, but was continued because respondent, who also works as an indigent defender in Iberia Parish, had a criminal matter scheduled the same day which under the local practice had priority over civil matters. Ms. Charles was advised of the continuance and the new trial date set in September 2015. Ms. Charles indicated that she never agreed to or authorized respondent to file the motion for continuance.

In May 2014, Ms. Charles was deposed by the defense. Due to an emergency, respondent was unable to attend the deposition. However, respondent made arrangements for another attorney to attend the deposition to represent Ms. Charles' interests and provided Ms. Charles with written material in preparation for giving deposition testimony. According to Ms. Charles, she did not know the attorney who appeared at the deposition on her behalf.

On August 20, 2015, respondent met with Ms. Charles. During the meeting, respondent advised Ms. Charles of a settlement offer of $75,000 plus court costs, which she recommended that Ms. Charles accept. On August 24, 2015, respondent faxed an acceptance letter to defense counsel. Two weeks later, defense counsel sent respondent the settlement documents and a check made payable to both Ms. Charles and respondent. Respondent endorsed Ms. Charles' name on the settlement check and deposited the check into her trust account on September 16, 2015. Respondent also signed a judgment of dismissal in Ms. Charles' suit, which was granted by the trial court on September 22, 2015.

On September 25, 2015, respondent met with Ms. Charles to have her execute the settlement documents and review the disbursement of settlement funds. In anticipation of Ms. Charles' agreement to the disbursement, respondent prepared seven checks drawn on her trust account to pay third-party healthcare providers and to pay her attorney's fee and advanced expenses.

During the meeting, a dispute arose concerning the disbursement of funds. Specifically, respondent and Ms. Charles disputed whether the "med pay" carrier had a lien on the settlement funds, whether monies needed to be set aside to satisfy such a lien, and which healthcare providers were paid and in what amounts. Multiple disbursement sheets were prepared in an attempt to properly allocate the proceeds, but respondent and Ms. Charles could not agree on how to disburse them.

Respondent's trust account records indicate that on September 30, 2015, she took $36,279.72 for her fees and expenses from the settlement funds. However, respondent did not simultaneously pay the remaining balance of $38,720.28 to Ms. Charles or to any third-party healthcare providers.

On October 12, 2015, the ODC received a complaint from Ms. Charles, alleging that respondent failed to communicate with her and settled her personal injury matter without her knowledge or consent.[1] Ms. Charles alleged that she did not learn about the settlement until September 11, 2015, a few days prior to the second trial date, when she called respondent to see if the trial was still set or if it had been "bumped" again.

On October 27, 2015, respondent hand-delivered to defense counsel an unsigned copy of the receipt and release of claim, a $75,000 check drawn on her trust account (although there were not sufficient funds in the account to honor the

---

[1] Answering the complaint, respondent's counsel stated that no dismissal had been signed, that the case was "alive and well," and that Ms. Charles could decide to try the case or re-negotiate the settlement. In fact, the order of dismissal had been granted by the court on September 22, 2015. At the hearing before the committee, counsel for respondent took full responsibility for this error.

check had it been presented at that time), and a letter explaining that she was refunding the settlement funds because Ms. Charles refused to sign the release. The next day, defense counsel returned the check to respondent, advising that the settlement was enforceable and suggesting that the proceeds be deposited into the registry of the court.

Respondent then filed a motion to rescind the judgment of dismissal. Although she was advised that a $300 filing fee had to be paid before the pleading could be processed, these costs were never paid. According to the deputy clerk for the Iberia Parish Clerk of Court, no funds were ever placed in the registry of the court in the matter. Instead, on November 13, 2015, respondent used $40,000 in personal funds to purchase a certificate of deposit from Regions Bank. Respondent listed herself as the "sole owner" of the certificate of deposit, which had a term of seventy months. There is no contemporaneous writing to evidence that this certificate of deposit was money set aside for paying Ms. Charles her share of the settlement proceeds or to pay any third-party healthcare providers.

Ms. Charles did not receive any settlement proceeds from respondent, and collection activity was initiated against Ms. Charles and her husband. Respondent also did not pay third-party health care providers from the settlement funds. Between January 2016 and May 2016, respondent's trust account had a balance of less than $38,720.28, the amount due to Ms. Charles and owed to her healthcare providers.

The ODC alleged that respondent's conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.2 (scope of the representation), 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 1.15(a) (safekeeping property of clients and third persons), 1.15(d) (a lawyer shall promptly deliver to a client or third person any funds or other property that the client or third person is entitled to receive),

4

3.3(a) (candor toward the tribunal), 4.1(a) (a lawyer shall not knowingly make a false statement of material fact or law to a third person), 8.1(a) (a lawyer shall not knowingly make a false statement of material fact in connection with a disciplinary matter), 8.4(a) (violation of the Rules of Professional Conduct), 8.4(b) (commission of a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (engaging in conduct prejudicial to the administration of justice).

## DISCIPLINARY PROCEEDINGS

In December 2016, the ODC filed formal charges against respondent, as set forth above. Respondent, through counsel, answered the formal charges, and the matter proceeded to a formal hearing on the merits.

### *Formal Hearing*

The hearing committee conducted the formal hearing in May 2017. The committee heard testimony from the following witnesses: Edward Landry, defense counsel in the underlying litigation; Phyllis Nelson, deputy clerk for the Iberia Parish Clerk of Court; Tammy Charles, complainant in the instant matter; Chester Gilliams, Jr., complainant's husband; and Eva May Landry, respondent's paralegal. Respondent testified on her own behalf and on cross-examination by the ODC.

### *Post-Hearing*

In July 2017, respondent's counsel disbursed the $40,000 in settlement proceeds which had been held in the certificate of deposit since November 2015 and were subsequently transferred to respondent's counsel's trust account. The disbursements included a $30,000 payment to Ms. Charles, reimbursement to Ms.

Charles of $4,481.30 she had previously paid for medical bills, and payments of the outstanding bills of Ms. Charles' medical providers.

*Hearing Committee Report*

After considering the testimony and evidence presented at the hearing, the hearing committee made several factual findings, the majority of which are incorporated into the underlying facts above. The committee also made the following factual findings:

The ODC failed to prove by clear and convincing evidence that respondent settled Ms. Charles' case without her consent. The weight of the evidence establishes that Ms. Charles had communicated her willingness to settle if she could net $30,000 after paying fees and expenses. On August 20, 2015, respondent met with Ms. Charles, advised her of the settlement offer, and recommended to her that she settle. Respondent's paralegal testified that she heard Ms. Charles tell respondent that she would be willing to settle if she could net $30,000. By letter dated October 12, 2015, Ms. Charles indicated that she would "consider" settling if she could put $30,000 in her pocket. Thus, respondent had a reasonable basis for believing that she had her client's consent to accept the offer.

The dispute between respondent and Ms. Charles arose out of Ms. Charles' claim for and receipt of "med pay" benefits prior to respondent's representation and over what medical bills were paid or needed to be paid. When disbursement sheets were prepared, questions arose as to whether the settlement proceeds were subject to a "med pay" lien and as to which third-party healthcare providers were owed and in what amounts. The evidence was conflicting as to whether Ms. Charles had communicated this information to respondent, who testified that she did not learn of the possibility of a "med pay" lien until after accepting the $75,000 offer.

Respondent should have paid Ms. Charles and the third-party healthcare providers the undisputed amounts owed. When an amicable settlement could not be negotiated, respondent should have referred the dispute to the Louisiana State Bar Association's ("LSBA") Fee Dispute Resolution Program, and any disputed funds should have been placed into her trust account or deposited into the registry of court. Ms. Charles and the third-party healthcare providers were entitled to receive undisputed funds simultaneously with respondent receiving her fee and advanced expenses.

The ODC argues for the presumption that respondent converted Ms. Charles' property although respondent was not charged with "conversion."[2] The evidence does not support this presumption. Respondent's unrebutted testimony is that she bought the certificate of deposit to "safeguard" the balance of the settlement funds. However, respondent acknowledged that her decision was a mistake and that she should have maintained the funds in her trust account or deposited them into the registry of the court. Respondent also admitted that she never told Ms. Charles or her new attorney that she purchased the certificate of deposit to "safeguard" Ms. Charles' share of the settlement and the monies necessary to pay third-party healthcare providers.[3]

During the course of this proceeding, respondent, through her counsel, disbursed the $40,000 which she had set aside in the certificate of deposit to Ms. Charles and to third-party health care providers. Respondent cooperated with the disciplinary process and voluntarily produced documentation regarding the certificate of deposit. Ms. Charles received $30,000 as her share of the settlement

---

[2] The committee is incorrect in this regard. The formal charges specifically allege that respondent converted the portion of the settlement funds owed to Ms. Charles and the third-party medical providers.

[3] However, Ms. Charles understood from her new attorney that the settlement funds had been placed in a "trust fund" and would remain there until she and respondent could come to an agreement on the distribution of the funds.

7

and was reimbursed $4,481.30 for medical bills she paid or had paid. Ms. Charles "netted" more than the $30,000 she told respondent she needed in any settlement.

The committee made the following findings concerning application of the Rules of Professional Conduct:

Respondent violated Rules 1.3 and 1.15(d) by failing to promptly pay her client and third-party healthcare providers the amounts they were undisputedly owed.

Respondent adequately communicated with Ms. Charles prior to the settlement of the case. However, she violated Rule 1.4 by failing to promptly disclose that she set aside $40,000 in a certificate of deposit to satisfy her obligations to Ms. Charles and to third-party healthcare providers. At best, this is a technical violation. Ms. Charles and third-party healthcare providers suffered no additional harm than if the monies had been safeguarded in the trust account or in the registry of the court.

Respondent violated Rule 1.15(a) by failing to maintain her trust account and by deciding to "safeguard" money by purchasing the certificate of deposit, as opposed to depositing the money into the registry of the court or into her trust account. She also issued a $75,000 check from the account when there were insufficient funds to pay the check. The balance of settlement funds on deposit after cashing her check for fees and expenses should have been $38,720.78, but several trust account statements show the balance to be less than that amount.

The ODC did not prove that respondent's continuance of the March 2015 trial date violated Rule 1.2. Respondent had a criminal matter scheduled the same day. Court rules mandate that criminal matters take precedence over civil matters, and the motion to continue the civil trial was based on that practice. Ms. Charles was advised of the continuance and the new trial date, and arguably, the case was not

8

ready for trial since Ms. Charles was still treating for injuries. There is no evidence that the continuance was prejudicial to the case.

The ODC did not prove that respondent "knowingly made false statements" in violation of Rules 3.3, 4.1(a), or 8.1(a). There was a dispute between Ms. Charles and respondent over the division of settlement proceeds. In hindsight, better and prompter communication and conduct by all concerned could and should have resolved this dispute. This communication failure is respondent's responsibility. Her misguided decision to set aside personal funds in a certificate of deposit to "safeguard" the balance of the settlement funds only complicated matters.

The committee found no violation of Rule 8.4, reasoning that "specific rules apply to the conduct in question."

The committee determined respondent violated duties owed to her client and to third-party healthcare providers. Respondent acted very negligently, but there is no persuasive evidence that she intended to knowingly convert Ms. Charles' money. Respondent testified that she used her own money to purchase the certificate of deposit. Ms. Charles and third-party healthcare providers suffered actual harm because respondent failed to promptly pay the amounts undisputedly owed to them. Ms. Charles was also dunned by healthcare providers, who were not promptly paid for services rendered. After considering the ABA's *Standards for Imposing Lawyer Sanctions*, the committee determined the applicable baseline sanction is suspension.

In aggravation, the committee found a prior disciplinary record. In addition, the committee noted that if respondent had died or become incapacitated, there is no evidence to show that the $40,000 certificate of deposit, which was in respondent's name, was set up to "safeguard" the money owed to Ms. Charles and third-party healthcare providers. Respondent had a continuing affirmative duty to promptly disburse the balance of the settlement funds, notwithstanding the deterioration in her relationship with Ms. Charles. Respondent should not have taken her fee without

9

simultaneously disbursing the balance, or at least the undisputed amounts, of settlement funds to Ms. Charles and to third-party healthcare providers.

In mitigation, the committee found a cooperative attitude toward the proceedings. Respondent eventually satisfied her obligations to disburse the balance of settlement funds. Blame for the delay in payment may, in part, lie with Ms. Charles, as resolution of the dispute was impeded by the strong feelings of Ms. Charles and her lack of understanding of the significance of a potential "med pay" lien, insofar as the disbursement of the settlement proceeds. Respondent's intent, however misguided, was to "safeguard" her client's property, not to steal it.

After further considering respondent's misconduct in light of this court's prior jurisprudence addressing similar misconduct, and her prior discipline for similar misconduct, the committee recommended respondent be suspended from the practice of law for one year, followed by a one-year period of supervised probation. The committee also recommended respondent be required to attend the LSBA's Ethics School, with particular attention to the proper use and operation of a client trust account. The committee also recommended respondent's trust account be audited at her expense, and that she be ordered to pay costs of this proceeding.

Both respondent and the ODC objected to the hearing committee's report. The ODC argued that the report contained numerous legal and factual errors, and further argued that the sanction recommended by the committee is too lenient. The ODC also argued that the committee erred in recommending respondent attend Ethics School, which respondent had previously attended "in a prior disciplinary matter to no avail." Respondent argued that the sanction recommended by the committee is too harsh.

*Disciplinary Board Recommendation*

After review, the disciplinary board found that the hearing committee's factual findings are not manifestly erroneous and are supported by the record. The board adopted these findings with limited revisions and additions, noting that the committee's determinations regarding the overall factual situation presented are supported when the record is considered in its entirety.

The board agreed with the committee's findings that respondent violated Rules 1.3, 1.4, 1.15(a), and 1.15(d) of the Rules of Professional Conduct. These violations establish a derivative violation of Rule 8.4(a).

The board adopted the committee's conclusion that respondent did not violate Rule 1.2. The evidence supports respondent's reasonable understanding that she had the authority to settle Ms. Charles' suit and endorse the settlement check.

The board adopted the committee's conclusion that respondent did not violate Rule 3.3(a). The ODC alleged that respondent filed a motion to continue the first trial date and falsely informed the court that Ms. Charles did not object to the continuance. The ODC also alleged that respondent filed, without Ms. Charles' knowledge or consent, a motion to rescind the judgment of dismissal which stated that Ms. Charles had agreed to settle and release the defendants. The board did not find these were misstatements of fact by respondent. The Charles matter was continued because respondent had a conflicting criminal matter which had priority under local practice. Filing a motion to continue may arguably imply consent of the client; however, contrary to the ODC's suggestion, respondent did not state in the motion that Ms. Charles "did not object to the continuance." In the motion and in her testimony, respondent stated that she had contacted defense counsel and that he had no objection to the motion. With respect to the motion to rescind, respondent reasonably believed that Ms. Charles had agreed to the settlement and dismissal, but a dispute as to disbursement arose after the fact.

The board adopted the committee's conclusion that respondent did not violate Rule 4.1(a). Because respondent reasonably believed that Ms. Charles had agreed to the settlement, she did not knowingly make a false statement of material fact when she informed defense counsel that Ms. Charles had agreed to settle the matter.

The board adopted the committee's conclusion that respondent did not violate Rule 8.1(a). Respondent did not knowingly make a false statement of material fact in connection with the disciplinary proceeding. At the hearing, when the ODC began to question respondent about the misstatement in her response to the complaint (see note 1, *supra*), counsel for respondent took full responsibility for the "unintentional" misstatement. The ODC also argued that respondent first raised her defense to conversion (by placing funds in a certificate of deposit to safeguard Ms. Charles' settlement funds) in her pre-hearing memorandum, which was filed within a month of the disciplinary hearing. However, two months before the hearing, respondent filed an amended answer, wherein she denied converting funds and stated that the funds were in her possession, protected at all times. While the amended answer did not specifically mention the certificate of deposit, it clearly states the funds were protected. There is no indication that the ODC conducted or requested an interview with respondent to explore the basis of her statement or any other issue or that she failed to cooperate with ODC in any way.

The board adopted the committee's conclusion that respondent did not violate Rules 8.4(b), 8.4(c), or 8.4(d).

The board determined that respondent "very negligently" violated duties to her client and to her client's healthcare providers. When it appeared to respondent that she and Ms. Charles would not reach a quick resolution regarding distribution of the settlement funds, respondent should have kept the funds in her trust account or deposited the funds in the registry of the court. Nevertheless, the funds remained untouched in the certificate of deposit until the matter was resolved and Ms. Charles

and the healthcare providers were paid. Viewing the record in its entirety, the committee's conclusion that "respondent's intent, however misguided, was to 'safeguard' her client's property, not to steal it" appears valid. Respondent caused actual harm to her client, who was deprived of her share of the settlement proceeds for eighteen months and was dunned for unpaid medical bills during that time. The dispute between respondent and Ms. Charles also unjustifiably delayed payment to the healthcare providers. After considering the ABA's *Standards for Imposing Lawyer Sanctions*, the board determined that the baseline sanction is suspension.

In aggravation, the board found a prior disciplinary record,[4] a pattern of misconduct, and substantial experience in the practice of law (admitted 2000). In mitigation, the board found a cooperative attitude toward the proceedings and "restitution." Although restitution was delayed, it does not appear to be forced or compelled as respondent always intended to pay out the money and only held the funds until the dispute over disbursement was resolved. The board added that a significant percentage of respondent's practice involves criminal defense and that she has worked as an indigent defender in the 16th JDC for fourteen years.

After further considering respondent's misconduct in light of this court's prior jurisprudence addressing similar misconduct, and her prior discipline for similar misconduct, the board recommended respondent be suspended from the practice of law for one year, followed by a one-year period of supervised probation. The board also recommended respondent's trust account be audited and that she be required to attend the LSBA's Trust Accounting School. The board further recommended respondent be assessed with the costs and expenses of this proceeding.

---

[4] In addition to her 2014 suspension in *Butler I*, respondent participated in the diversion program in November 2003 for failing to return an unearned fee and failing to protect the interests of a former client after the termination of representation.

Both respondent and the ODC objected to the disciplinary board's recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).

**DISCUSSION**

Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. *In re: Banks*, 09-1212 (La. 10/2/09), 18 So. 3d 57. While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee's factual findings. *See In re: Caulfield*, 96-1401 (La. 11/25/96), 683 So. 2d 714; *In re: Pardue*, 93-2865 (La. 3/11/94), 633 So. 2d 150.

The record of this matter supports a finding that respondent failed to communicate with her client, failed to promptly remit funds to her client and to third-party medical providers, and failed to place disputed funds into her trust account. Based on these facts, respondent has violated the Rules of Professional Conduct as found by the disciplinary board.

Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent's actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. *Louisiana State Bar Ass'n v. Reis*, 513 So. 2d 1173 (La. 1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and

mitigating circumstances. *Louisiana State Bar Ass'n v. Whittington*, 459 So. 2d 520 (La. 1984).

Respondent violated duties owed to her client and to her client's healthcare providers. Her conduct was grossly negligent and caused actual harm to her client. Considering the facts of this case in light of respondent's prior disciplinary record for similar misconduct, we find that the appropriate sanction is a one year and one day suspension from the practice of law.

However, we recognize there are some compelling mitigating factors in this case. Respondent has displayed a cooperative attitude throughout these proceedings. She always evidenced an intent to protect her client's funds and make full restitution to her client. After some delay, respondent, with the assistance of her counsel, made payment to her client's satisfaction. Additionally, while not technically a mitigating factor, we observe that respondent has worked as an indigent defender for fourteen years and a significant percentage of her practice involves criminal defense.

Considering these factors, we will defer all but six months of the suspension and place respondent on probation for two years, subject to the following conditions: (1) respondent shall attend Trust Accounting School, and (2) she shall not undertake the representation of any clients in civil cases of any kind without supervision.

**DECREE**

Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Alicia Johnson Butler, Louisiana Bar Roll number 26613, be and she hereby is suspended from the practice of law for a period of one year and one day. All but six months of this suspension shall be deferred, subject to respondent's successful completion of a two-year period of probation governed by the conditions set forth in this opinion. The probationary period shall commence from the date

15

respondent and the ODC execute a formal probation plan. Any failure of respondent to comply with the conditions of probation, or any misconduct during the probationary period, may be grounds for making the deferred portion of the suspension executory, or imposing additional discipline, as appropriate. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.

01/30/19

# SUPREME COURT OF LOUISIANA

## NO. 2018-B-1472

## IN RE: ALICIA JOHNSON BUTLER

## ATTORNEY DISCIPLINARY PROCEEDING

**GENOVESE, J.**, dissents and, considering the facts presented herein, would reject any deferral of suspension.